# H. E. SMITH AND JOHANNA SMITH v. D. M. PHILLIPS.

### (Filed Feb. 8, 1900.)

1. REAL ESTATE—*Possession—Purchaser—Notice.* It is the general rule that open, notorious, unequivocal and exclusive possession of real estate under an apparent claim of ownership, is notice to the world of whatever claim the possessor asserts, but that this rule does not apply to a vendor remaining in possession, so as to require a purchaser from his grantee to inquire whether he had any interest in the land conveyed.

2. SAME—*Grantor and Grantee—Inquiry—Fraud.* But the law requires, still, that a purchaser under such circumstances shall be an innocent and *bona fide* purchaser, and free from any collusion with a fraud upon the person who was apparently the vendor and grantor, who remains in possession. And if a fraud has been perpetrated, and the facts and circumstances are such as to put the purchaser upon inquiry, and to create reasonable grounds for believing that a mistake has been made or a fraud perpetrated, he will not be in a position to avail himself of the above rule.

3. SAME—*Conveyance—Description—. Consideration.* The facts in this case show that a fraud was perpetrated upon the plaintiffs in error by one Evens, by selling to the defendant property which had been conveyed to Evans by a mutual mistake of the plaintiffs in error and said Evans. There were numerous circumstances, including misdescription, conveyance of land to which none of the parties had ever had any interest, and extreme disparity of consideration, which should have put the defendant in error upon inquiry, and from which it must be inferred that he had reasonable grounds to believe that a mistake had been made; and the defendant in error cannot, therefore, be treated as an innocent and *bona fide* purchaser.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before James R. Keaton, District Judge.*

*R· G. Hays* and *J. S. Jenkins,* for plaintiffs in error.

*J. H. Everest* and *H. H. Howard,* for defendant in error.

### STATEMENT OF THE CASE.

On June 3, 1894, one Evans was the owner of two parcels of land which for the convenience of this opinion, will be described as lots 1 and 3, located in the south-west quarter of section 3, township 11, range 3, west, in Oklahoma County and which lay between the North Canadian river and the west line of the said quarter section.

The land consisted of a strip one half a mile long and about four hundred feet wide, and will be best designated by a map herewith:

N.

S.

Sec. 3, Twp. 11 N., R. 3 W.

Upon that date he conveyed to Johanna Smith, one of the plaintiffs in error, an undivided half interest in said lands, lots 1 and 3, in said quarter section, which are so designated and numbered on the map. The plaintiffs in error are husband and wife, and on the 31st day of October, 1894, Johanna Smith and Evans, still being the joint owners of an undivided half interest in said lots 1 and 3, divided lot 3, by the said Johanna Smith and H. E. Smith, her husband, conveying to Evans the north portion of said lot, which is marked in black [shaded] lines on said map, and at the same time the said Evans and Johanna Smith conveyed to H. E. Smith the south portion of said lot 3, which tract of land is in white upon said map.

Thereafter, and immediately upon becoming the grantee of the south half of lot 3, Smith built a house upon it, and fenced the tract of land, and has been in open and exclusive possession thereof until the present time. Thereafter, the said Johanna Smith and W. R. Evans continued to own lot 1 in common until the 10th day of April, 1895, when they agreed to divide it, so that Johanna Smith should have the northern, or larger portion thereof, marked in black [shaded] lines upon said map, and that the said Evans should have the smaller, or southern portion thereof, which is designated on said map in white. The said Johanna Smith thereupon paid Evans $350 for the difference in the division of lot 1, and on April 10, 1895, they undertook to convey to each other the respective tracts of land to which each was entitled under said division, to-wit:  the northern, or larger, portion of lot 1 to Johanna Smith, and the south-

ern, or smaller portion thereof, in white, to Evans, in each of which deeds mistakes were made.

In the deed from Smith and wife to Evans, the land was described as "part of lot in section 3, township 11, range 3 west, beginning at a point 2,404 feet south of the northwest corner section 3, township 11, range 3 west, at a certain elm tree standing 6 feet east of the west line said section; thence south to the southwest corner section 3, township 11, range 3 west; thence due east to the channel of North Fork Canadian river; thence down channel of said river to a point due east place beginning; thence west to the place of beginning."

The evidence taken in the case shows that the point of beginning in this deed is erroneous; that it was the purpose of both parties to make the point of beginning 2,404 feet south of the northwest corner of the southwest quarter of said section, instead of 2, 404 feet south of the northwest corner of section 3.

At the same time, Evans, to carry out the contract of division of lot 1, executed to Johanna Smith a deed intending to convey to the said Johanna Smith the north, or black [shaded] portion of said lot 1, in which deed there was also a mistake in the description, which description was as follows:

"Part of lot 1, in section 3, township 11, range 3 west, beginning at a point 1,375 feet south of the northwest corner of section 3, township 11, range 3 west; thence south 1,029 feet to a certain elm tree standing six feet east of the west line said section 3, township 11, range 3 west; thence east to the middle of the channel North Fork Canadian river; thence down middle channel said

river to a point due east of the place beginning; thence. west to the place of beginning."

This description was also erroneous, describing, as it did, land in the northwest quarter of section 3, in which neither Evans nor the Smiths had any interest.

The evidence shows that immediately upon the execution of the deed, Johanna Smith took possession of that portion of lot 1 which it had been intended to convey to her by the deed of Evans, fenced the same, cleared out the underbrush, planted trees, and used the same as a park for public gatherings, and, with her husband, has been in the open and exclusive possession of the same.

On the 9th day of November, 1895, Evans, having discovered a mistake in the description of the deeds, executed to D. M. Phillips a deed of general warranty, by which he undertook to convey all the north tract of land contained in lot 3 which had, before that time, been conveyed by him and Johanna Smith to H. E. Smith by the deed of October 31, 1894, and which was included in the mutual error of Evans and Smith and wife in the deed of April 10, 1895, by which they undertook to convey the south portion of lot 1, and did, in fact, by the mistaken description in the deed, "beginning at a point 2,404 feet south of the northwest corner section 3, township 11, range 3 west, at a certain elm tree standing six feet east of the west line of the said section; thence south to the southwest corner section 3, township 11, range 3 west; thence due east to the channel North Fork Canadian river; thence down channel of said river to a point due east of beginning; thence west to the place of beginning," convey, if the

same should be here held to be effective, all of their interests in both lots 1 and 3. The consideration named in the deed to Phillips was the sum of $250.

This action was brought by Phillips to recover possession of both tracts of land, which, in the division, were to belong to the plaintiffs in error Smith.

A jury was empaneled, but subsequently discharged by the agreement of both parties, and the cause submitted to the court, which rendered judgment in favor of Phillips for the tract of land conveyed to H. E. Smith in lot 3, and designated on the map in white, and in favor of the defendants below, Smiths, for the tract of land intended to be conveyed to them in lot 1, and designated on the map in black [shaded] lines.

Opinion of the court by

McATEE, J.: It is admitted, as a general rule, that actual possessin of real estate is *prima facie* evidence of ownership or of some claim to the property; but it is contended by the defendant in error that possession is not notice of any claim or evidence of title, as against the deed of the party in possession.

The rule relied upon is stated in *McNeil v. Jordan*, 28 Kans. 7, as follows: .

"While it is the general rule that open, notorious, unequivocal and exclusive possession of real estate, under an apparent claim of ownership, is notice to the world of whatever claim the possesser asserts, whether such claim can be legal or equitable in its nature, yet this rule does not apply to a vender remaining in possession, so as to require a purchaser from his grantee to inquire whether he has reserved any interest in the

land conveyed. Such grantor, though in actual pos-
session, is deemed to hold the same for a temporary pur-
pose, without claim of right, and merely as a tenant at
sufferance of the grantee."

The rule confines itself originally to the proposition
that when a loss has happened which must fall upon
one of two innocent persons, it shall be borne by him
who is the occasion of the loss, even without any pos-
sible fault committed by him, and that if the injury re-
sults to an innocent third person, the act, or mistake,
or negligence, which has been the cause of it, must fall
upon him who has committed the mistake, and not
upon such innocent third person, and that if the deed
is made which is effectual to convey the estate, it will
be final and effective as aganist the grantor, if the land
is subsequently purchased by an innocent third person,
who is a *bona fide* purchaser.

In the case under consideration, the evidence shows
that on the 31st day of October, 1894, the south portion,
in white, of lot 3, was sold to H. E. Smith for the sum
of $1,000; that, thereafter he built a house upon it,
fenced it, built stables, broke it up and planted shade
trees, made a home of it, and has been livnig there, and
was living there at the time of the litigation. One
thousand dollars having been paid for the land in 1894,
and these improvements having been added, Phillips
thereafter took a deed from Evans therefor, the consid-
eration of which is stated to be $250. This sum is one-
fourth of the value estimated when H. E. Smith pur-
chased the property in the previous year, and no account
at all is taken of such added value as accrued to the
property from the improvements made by Smith in

building his house, stables, fencing and the planting of trees on the land. The only right which Phillips claims as against the Smiths arises from their conveyance of the land by the erroneous deed, in which the description of the land begins, "at a point 2,404 feet south of the northwest corner section 3" that is, on a quarter section of land belonging to one McCormick, and purports to convey 236 feet from north to south of McCormick's claim at that point, a portion of land in which the Smiths had no particle of interest.

The description purports to begin, "at a certain elm tree standing six feet east of the west line of the said section." The evidence shows that there was no elm tree there, but on the contrary, that point was open prairie. The deed from Evans to Phillips includes, not only the south portion of lot 3, for which the evidence snows that H. E. Smith had paid $1,000, but also the whole of lot 1, being only a part, less than a half, of which Johanna Smith had in the previous year paid to Evans $350. The gross disparity in the consideration which the face of the deed shows that Evans offered and sold a portion of this property for, to Phillips, is sufficient to upset any theory that Phillips was a *bona fide* purchaser.

It is, moreover, a well known principle in respect to the methods of establishing the boundaries of an estate, that where there is a conflict between the natural monuments which are referred to in the description, and the course and distances which are referred to in the description, that the natural monuments must govern, and that this proposition is supported to the extent that

monuments must control courses and distances, even if it causes a wide departure from them. (3d Washburne on Real Property, 407; *Wells v. Company,* 47 New Hamp. 235-261.)

The evidence showed that an elm tree was standing six feet west of the line of section 3, at the northwest corner of the southwest quarter of said section. In making the conveyance to Phillips, Evans was engaged in perpetrating a fraud upon the Smiths. The disregard which Phillips showed of the fact that the deed from Smith and wife to Evans undertook to convey a considerable part of McCormick's claim, to which the record showed they had no claim whatever, and the enormous disproportion between the consideration named in the deed from Evans to Phillips, and the real value of the property, as shown in the evidence, which it is manifest was many times in excess of the consideration of $250 named in the Phillips deed, we think destroyed any presumption that Phillips was an innocent or *bona fide* purchaser.

The judgment of the court will, therefore, be reversed, and the case remanded for further proceedings.

All of the Justices concurring.